# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**THOMAS WOLF,**

      **Plaintiff,**

**v.**                           **Case No.  8:10-cv-2725-T-30TGW**

**McCULLEY MARINE SERVICES, INC., a**
**Florida corporation; PINE ISLAND**
**TOWING CO., a Florida corporation,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Partial Summary

Judgment on Plaintiff's Demand for Punitive Damages (Dkt. 42) and Plaintiff Thomas

Wolf's Response to Motion for Partial Summary Judgment on Demand for Punitive Damages

(Dkt. 70).  The Court, having reviewed the motion, response, and being otherwise advised

of the premises, concludes that the motion should be denied.

## BACKGROUND

On January 20, 2009, the *ELIZABETH ANN* ("tug") was hauling a barge with 600 tons

of sand to Nassau, Bahamas when the towing hawser[1] parted, causing the barge to separate

from the tug.  At the time of the incident, the tug's crew consisted of Captain Jay Phipps,

Mate Helo La Chappelle, deckhand Joe Blazer, and deckhand Thomas Wolf.  The

---

[1]The towing hawser is the wire cable connecting the tug to the barge.  The hawser is approximately 1,500 feet long and comprised of twisted steel strands.

crewmembers used an emergency hawser[2] aboard the tug to reconnect the adrift barge.  To accomplish this task, Captain Phipps brought the tug alongside the barge and ordered a deckhand to throw the eye[3] of the emergency hawser to a bitt situated on the barge's edge. Wolf successfully threw the hawser over the barge bitt on his third attempt.  While doing this maneuver, Wolf allegedly injured his neck and shoulder.  At the time of the injury, Pine Island Towing Company employed Wolf, and McCulley Marine Services, Inc., performed the maintenance and operation of the tug and barge.

The parties disagree whether an emergency hawser was strung along the starboard side of the barge with the line attached to a pickup buoy over the stern.  According to Wolf's expert, Captain Richard L. Frenzel, if such a hawser existed, Captain Phipps was negligent by not securing the barge using the hawser that was attached to the barge itself (Dkt. 70-3). Frenzel holds that Captain Phipps' decision to bring the tug alongside of the barge placed the crew in unnecessary danger because of the reported seas were between seven to twelve feet high (Dkt. 70-3).  According to McCulley's expert, Captain Donald Kinsey, Jr., the barge was equipped with an emergency hawser but Captain Phipps' decision to use the tug's emergency hawser to connect directly to the barge was not negligent (Dkt. 42-1).  Kinsey also finds that the tug was "in all respects properly fitted out and suitable for the job" (Dkt. 42-1).

---

[2]The emergency hawser's weight is in dispute.  Captain Frenzel, Wolf's expert, reports it as a three inch diameter line weighing 4.77 pounds per foot.  Captain Donald Kinsey, Jr., McCulley's expert, reports it as three inch diameter line weighing 1.56 pounds per foot.

[3]The eye is an approximately five-foot long loop in the hawser.

Wolf states the tug was insufficiently crewed and that he was inadequately trained for the responsibilities demanded of him that night, thus contributing to the alleged unseaworthiness of the tug on that occasion.  McCulley and Pine Island respond that Captain Phipps has a 100-ton Master of Steam or Motor Vessel and Mr. La Chappelle has a 1600-ton Master of Steam or Motor Vessel.  According to 46 C.F.R. § 15.810(b), a vessel under 100 gross tons is required to have one captain and one licensed mate.  This statutory requirement was more than satisfied with two licensed captains and two deckhands.   Additionally, they assert Wolf was appropriately trained for the rudimentary skill of throwing lines, the action called upon him to perform on January 20, 2009.

McCulley and Pine Island admit they did not maintain a "hawser log" on board the tug prior to the January 20, 2009 incident, placing them in violation of 33 C.F.R. § 164.74(a)(3).[4]  Wolf also asserts that a few weeks prior to the incident he told McCulley and Pine Island that the hawser was rusting away from the inside, but that McCulley and Pine Island told him it was too expensive to replace.  McCulley and Pine Island deny ever being given notice by Wolf of such deterioration of the hawser.

According to Wolf, he reported his injuries to Captain Phipps immediately following the incident and complained of his pain throughout the rest of the voyage.  Upon returning to Fort Peirce, Wolf told Beth Mills, McCulley and Pine Island's office manager, that he injured his shoulder.  According to Ms. Mills, Wolf refused medical treatment at that time,

---

[4]A hawser log would include a record of the material condition of the towline, including visible damage, surface corrosion and discoloration, nautical miles covered, and amount of material deterioration indicated by measurements of its diameter.

even though she strongly encouraged him to get an X-ray.  Wolf denies refusing medical assistance.

McCulley and Pine Island assert that Wolf did not report any injury from the January 20, 2009 incident until his initial attorney, Keith Gould, sent the third-party adjuster, Tony Kaplan, a letter requesting a claim be established on May 6, 2009.  Maintenance and cure payments began following this letter, although Wolf had already seen Dr. DeSousa on February 4, 2009, who recommended Wolf see a neurosurgeon.  Instead of visiting a neurosurgeon, on May 14, 2009, Wolf went to the office of Dr. Tolli, an orthopedic surgeon, where he was prescribed physical therapy.  Wolf attended physical therapy in Indiana between May 20, 2009 and June 23, 2009; however, the physical therapist noted in her report that he had a "negative outlook on therapy" (Dkt. 56).

On June 23, 2009, Dr. Tolli classified Wolf as totally disabled and advised an "anterior diskectomy and interbody fusion, trabecular metal implant, plate fixation and other indicated procedures at the C4-5, 5-6" levels of his lower back (Dkt. 42-4).  Wolf reported this information to Kaplan, who asked for him to visit Dr. Delgado, a neurosurgeon, for another opinion.  On July 16, 2009, Wolf was videotaped launching and operating a center console boat (Dkt 42-5).  On August 7, 2009, Dr. Delgado found Wolf a potential surgical candidate and not fully at maximum medical improvement ("MMI") (Dkt. 42-6).  Finally, on October 9, 2009, Dr. Delgado re-evaluated Wolf after reviewing his CT cervical myelogram and nerve conduction study and found him to be at MMI "from a neurosurgical

point of view" (Dkt. 42-7).  At this point, McCulley ceased maintenance and cure payments based on Dr. Delgado's MMI evaluation.

Wolf reinitiated his demand for surgery in April 2010.  Rod Sullivan, Wolf's current attorney, exchanged emails with Kaplan concerning the renewed request for authorization of the recommended surgery by Dr. Tolli.  Wolf agreed to be re-evaluated by Dr. Tolli and Dr. Delgado, both of whom reiterated their prior assessments.  On May 20, 2010, Wolf saw Dr. Deutsch who advised that Wolf was a candidate for an "anterior cervical diskectomy at C4-5 and C5-6" (Dkt. 43).  However, McCulley and Pine Island claim they never received this report until produced by Wolf in response to a request for production in March 2011.

From April 2010 until August 2011, Kaplan denied reinstatement of maintenance and cure benefits until Wolf attended another independent medical evaluation ("IME") by an orthopedic surgeon because of the conflicting medical advice offered by Dr. Delgado and Dr. Tolli.  That request went ignored, and Wolf filed the instant suit against McCulley on December 7, 2010.  Wolf finally agreed to an IME by Dr. Schulak on August 31, 2011.  Within a month of Dr. Schulak's evaluation, McCulley and Pine Island authorized surgery by Dr. Tolli and reinstated maintenance, retroactively applying it back to October 2009.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a

conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## LEGAL DISCUSSION

1.     **Defendants' Motion for Partial Summary Judgment On Plaintiff's Demand for Punitive Damages and Attorney's Fees for Maintenance and Cure**

Maintenance and cure is an ancient legal duty that obligates a vessel owner to provide for a seaman who becomes ill or injured in the service of the ship. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962).  "Maintenance" includes a  living allowance for food and lodging while "cure" refers to medical treatment. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 413 (2009).  Maintenance and cure extend from the time of incapacitation until the seaman reaches maximum medical recovery. *Vaughan*, 369 U.S. at 531.

A seaman reaches maximum cure when it appears likely that further treatment will not result in betterment of his condition. *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979).  "Where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Id.*  However, admiralty courts are to construe these benefits liberally and resolve any doubts or ambiguities in favor of the seaman. *Vaughan*, 369 U.S. at 531-532.

In a non-statutory federal maritime action,[5] the Supreme Court recently held that punitive damages are available for the "willful and wanton disregard of the maintenance and cure obligation." *Atlantic Sounding Co., Inc.*, 557 U.S. at 424.   Reasonable attorney fees may also be awarded when a shipowner acts "in bad faith, callously, or unreasonably" in the withholding of maintenance and cure benefits. *Crow v. Cooper Marine & Timberlands Corp.*, 657 F. Supp. 2d 1248, 1252 (S. D. Ala. 2009) (quoting *Flores v. Carnival Cruise Lines*, 47 F.3d 1120, 1127 (11th Cir. 1995)).

In *Hines v. LaPorte, Inc.*, 820 F.2d 1187 (11th Cir. 1987), the Eleventh Circuit identified examples of willfulness warranting punitive damages and attorney fees: "(1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; and (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically." *Id.* at 1190 (quoting *Tullos v. Resource Drilling, Inc.* 750 F.2d 380, 388 (5th Cir. 1985)).

In the instant case, McCulley and Pine Island argue they are entitled to summary judgment on Wolf's demand for punitive damages and attorney's fees because they did not act willfully or wantonly towards Wolf's request for surgery.  Instead, they argue they reasonably relied on Dr. Delgado's determination that Wolf reached MMI on October 9,

---

[5]The Supreme Court specifically avoided ruling on whether the Jones Act's damages provision precludes recovery of punitive damages for actions arising under that statute. *Atlantic Sounding Co., Inc.*, 557 U.S. at 424 n.12.  Because McCulley and Pine Island did not move for summary judgment on Wolf's demand for punitive damages under his Jones Act negligence claim in Count I, this Court will not at this juncture address the availability of punitive damages for that claim.

2009, and they rightfully terminated his benefits at that time. They also assert they used good faith while investigating his renewed claim for maintenance and cure in April 2010, but that Wolf failed to provide further medical documentation to support his demand for surgery and refused to submit to another IME to determine what, if any, surgery was needed. After finally completing the requested IME on August 31, 2011, McCulley and Pine Island quickly reinstated Wolf's benefits and authorized the surgery by Dr. Tolli, which was completed on November 30, 2011. Therefore, they argue their conduct cannot be legally defined as "willful and wanton" in withholding maintenance and cure.

Here, the record, accepted in a light most favorable to Wolf, indicates that Wolf requested surgery based on Dr. Tolli's recommendation on June 23, 2009. Wolf again asked for surgery in April 2010 after re-visiting Dr. Tolli and Dr. Delgado, both of whom reiterated their prior opinions. During that time, Wolf saw Dr. Deutsch who also recommended surgery. The record is unclear whether McCulley and Pine Island received Dr. Deutsch's report prior to the initiation of this lawsuit in December 2010, but even after they received it as discovery in March 2011, Wolf's request for surgery was still refused until September 2011. At that time, there were two doctors recommending surgery against one who did not believe it would improve Wolf's condition. Therefore, Wolf argues McCulley and Pine Island's denial of surgery for almost two and a half years was willful and wanton.

Wolf's demand for punitive damages and attorney's fees centers upon whether McCulley and Pine Island's delay in authorizing the recommended surgery by Dr. Tolli qualifies as willful and wanton. Although McCulley and Pine Island don't appear to have

engaged in one of the three per se "willfulness" violations listed in *Hines*, 820 F.2d at 1190,

a reasonable jury could find McCulley and Pine Island's behavior evinces willful and callous

disregard of the maintenance and cure obligations, especially because of the Supreme Court's

admonition to resolve doubts in favor of seamen.  *Vaughan*, 369 U.S. at 531-32.  Because

Wolf received conflicting diagnoses and prognoses by multiple physicians, genuine issues

of material fact remain that preclude partial summary judgment on the issue of punitive

damages and attorney's fees.  *See Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th

Cir. 1985) (reversing and remanding to submit question of punitive damages to the jury

because conflicting medical reports were not so clear and consistent "as to validate removing

the issue of arbitrary and capricious denial of maintenance and cure from the jury").

**2.      Defendants' Motion for Partial Summary Judgment On Plaintiff's Demand for**

**Punitive Damages and Attorney's Fees for Unseaworthiness**

"A ship owner is strictly liable for personal injuries caused by his or her vessel's

unseaworthiness.  A vessel is unseaworthy if the vessel and its appurtenances are not

reasonably fit for their intended use." *Baucom v. Sisco Stevedoring, LLC*, 560 F. Supp. 2d

1181, 1198 (S.D. Ala. 2008) (quoting *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 383

(6th Cir. 2008).  "Even a temporary and unforeseeable malfunction or failure of a piece of

equipment is sufficient to establish an unseaworthy condition." *Id.* at 1198 (quoting *Napier*

*v. F/V DEESIE, Inc.*, 454 F. 3d 61, 68 (1st Cir. 2006)).

Once an unseaworthy condition has been established, the plaintiff must still

demonstrate that the unseaworthy condition was the proximate cause of his injury.  Unlike

the relaxed Jones Act standard, proximate cause for unseaworthiness means "the cause which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the results complained of, and without which it would not have occurred." *Id.* at 1199 (quoting *Napier*, 454 F.3d at 68); *see also McClow v. Warrior & Gulf Navigation Co.*, 842 F.2d 1250, 1251 (11th Cir. 1998) (declining to extend the less demanding Jones Act standard of causation to general maritime law claims).

Unlike in the maintenance and cure context, the Supreme Court has not directly addressed the issue whether punitive damages and attorney's fees are recoverable in an unseaworthiness claim. The Eleventh Circuit Court of Appeals, in *In re Amtrak Sunset Ltd. Train Crash*, 121 F.3d 1421 (11th Cir. 1997), held that nonpecuniary damages such as punitive damages were only available in exceptional circumstances, such as the "intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman and in those very rare situations of intentional wrongdoing." 121 F.3d at 1429. However, in *Atlantic Sounding*, the Supreme Court clarified that punitive damages historically "extended to claims arising under federal maritime law." *Atlantic Sounding*, 557 U.S. at 411. Thus, punitive damages may be awarded in an unseaworthiness action when the plaintiff can prove "wanton, willful, or outrageous conduct."[6] As in maintenance and cure actions, attorney's fees may be

---

[6]A seaman no longer needs to prove intentional misconduct by the vessel owner. *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323, 2012 WL 920675, at *4 (S.D. Fla. Mar. 19, 2012) ("[T]he exceedingly narrow standard for punitive damages annunciated in *Amtrak* . . . is no longer viable in view of the broad reasoning in *Atlantic Sounding* that, as a rule, common law remedies extend to federal maritime actions.").

awarded when the shipowner acts "in bad faith, callously, or unreasonably." *Flores*, 47 F.3d at 1127.

McCulley and Pine Island again argue that they are entitled to summary judgment on Wolf's demand for punitive damages and attorney's fees because they did not willfully or wantonly violate their duty to provide a seaworthy vessel.  For them to succeed in this argument, there must be no genuine issue of material fact related to the following:  (1) whether the tug was unseaworthy on January 20, 2009; (2) whether the unseaworthiness was the proximate cause of Wolf's injuries; and (3) whether they acted willfully or wantonly in allowing the tug to be unseaworthy.  Viewing the record in a light most favorable to Wolf, a reasonable jury could find McCulley and Pine Island liable on all three factors and therefore summary judgment is inappropriate.

Both parties submitted expert opinions (Dkt. 42-1; 70-3) evaluating the tug's seaworthiness on January 20, 2009, including whether the vessel was sufficiently crewed, the condition of the towing hawser, the existence of a hawser log, the placement of the emergency hawser, and the reactions of Captain Phipps to the barge separating from the tug. Not surprisingly, the experts disagree about whether the tug and its management placed the seamen in an unseaworthy vessel on January 20, 2009.  Therefore, genuine issues remain whether the tug was unseaworthy.

McCulley and Pine Island argue much more vehemently that Wolf was not injured by the parting of the towing hawser or the number and experience of the crew.  However, a reasonable jury could find that the chaotic situation created by the parting of the hawser and

Captain Phipps' maneuvering of the tug was the proximate cause of Wolf's injuries. A reasonable jury could also conclude that the failure to use the towing hawser attached to the barge, instead of the one on the tug, was the proximate cause of Wolf's injuries. Clearly, it was the but-for cause, and, when looking at the record in the light most favorable to him, it could be classified as the "natural and continuous" result.

Lastly, the willful and wantonness of allowing the tug to be unseaworthy primarily turns upon whether McCulley and Pine Island had notice of the towing hawser's condition prior to its parting. Here again, the record is disputed. Wolf claims he told them a few weeks prior to the incident that the hawser was "rusting inside out" but that they responded it was "too expensive" to replace (Dkt. 55). McCulley and Pine Island deny this conversation. Wolf also argues a hawser log would have put McCulley and Pine Island on notice by the required inspections under 33 C.F.R. § 164.74(a)(3). McCulley and Pine Island argue they did examine the hawser for corrosion, and their expert states it was "young" in its service life. Therefore, genuine issues of material fact remain that preclude partial summary judgment on the issue of punitive damages and attorney's fees for the unseaworthiness claim.

Of course, McCulley and Pine Island may raise the issues argued here by motion for a directed verdict after the Court has had the benefit of hearing the evidence at trial.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendants' Motion for Partial Summary Judgment on Plaintiff's Demand for

Punitive Damages (Dkt. 42) is hereby **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on September 17, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Odd\2010\10-cv-2725-SJM for punitive damages.frm